No. 927

First Circuit

BONNIN v. UNION SULPHUR CO.

(February 8, 1932. Opinion and Decree.)

Hawkins & Pickrel, of Lake Charles, attorneys for plaintiff, appellant.

C. R. Liskow, of Lake Charles, attorney for defendant, appellee.

MOUTON, J. Plaintiff alleges that while in the service of defendant company in attempting to lift and place on a rack a drill stem weighing about 300 pounds, he sprained and injured his spermatic cord, his vas deferens and his left groin; that when he attempts any physical exertion, bends over or walks, he suffers the most excruciating pains and on account of these injuries he is totally and permanently disabled from performing work of any reasonable character.

He avers that a day or two after he was

injured, Dr. Lafargue treated him and sent him to Dr. Watkins of Lake Charles, who has since been attending to him.

He is asking compensation in the sum of $8,000 against defendant company.

His demand was rejected and he appeals.

The proof shows that plaintiff suffered some injury while lifting a drill pipe for defendant company. The pains he experienced as a result of the injury were not serious and it clearly appears from a large preponderance of the evidence were not excruciating at the time of the accident or since, as by him alleged. It is unnecessary for us to give a detailed analysis of the evidence that has lead us to the foregoing conclusion of facts, as it is fully supported by the record.

Plaintiff suffered no hernia, as this is clearly established. The vital issue presented is as to whether he suffered a serious sprain or injury to his spermatic cord.

Dr. Lafargue, the physician who first gave plaintiff medical attention, was asked if plaintiff was not suffering from a strain of the spermatic cord. He answered: "Well, it could be that." Dr. Lafargue, further, in his explanation of what he had said, testified that a stretch or strain of the spermatic cord could give a pain in the region of the hernia. Testifying along that line, he said that such cases, "as a rule," cure themselves.

Plaintiff was sent by Dr. Lafargue to Dr. Watkins in April, 1931, for treatment for his injury, which occurred in July, 1930.

Dr. Lafargue was asked by counsel for plaintiff if when plaintiff was sent to Dr. Watkins, he, Dr. Lafargue, had not written counsel that plaintiff was suffering from a strain to his spermatic cord. The doctor answered that he had not examined plaintiff at that time and had taken "his word for it."

Dr. Watkins, to whom plaintiff had been sent by Dr. Lafargue for treatment, says, he saw him two or three times last summer "after he was injured." At his last examination of plaintiff, he found nothing wrong with him, no abnormal condition and no "objective symptoms of any injury at all." Only a litle nodule to the epididymis, no injury to the "spermatic cord," and none that could disable plaintiff. Dr. Watkins could find no cause for any pain in plaintiff's left groin, from which he avers he was suffering. He further said that he had never seen a case where any injury to the spermatic cord had resulted from a strain. An injury thereto, he says, might result from a trauma but not from a strain, and there is no proof here that the alleged strain was a result of a trauma.

Plaintiff was also examined by Dr. Bordelon about three weeks before the trial. He found an enlargement of the spermatic cord, that unless, he said, he was "hit directly upon it," or suffered a trauma, he could not see how he could have suffered any pain up to the time of the trial. All that this doctor could find was an induration of the left spermatic cord, and the only result would have been the evidence of a scarred tissue. Dr. Bordelon could not believe that plaintiff could have been suffering from any pain when he made his examination. He had simply to take his word for it, as there were no objective symptoms to lead him to so believe.

Dr. Holcombe, testifying for plaintiff, was of the opinion that an enlargement of

the left spermatic cord might be very painful, and that it could have been the result of a strain. Dr. Holcombe, testifying on that subject, said that the inflammation caused by the enlargement of the spermatic cord, according to the "ranking file of my experience in the office," would, under ordinary conditions, pass off in "six months or less." On this subject he further states that it would be very unusual for such pains to continue from an injury received "last July." Such things, he says, "gradually fade out" and when asked if he thought that an injury received at that time to the spermatic cord could disable a man from doing any work, he answered: "That is not the regular run of cases"; that these cases "compensate themselves and there is a gradual cessation."

The evidence shows that plaintiff, before the accident, was working in the laboratory of defendant company. He returned to his work, excepting, he claims, that after his return he was working only in the laboratory and not in the yard where he also rendered services previously.

T. B. Brown, a witness for defendant company, says that in March, 1931, plaintiff helped him to load on a truck a 600-pound slab, and on another occasion, in April, 1931, he assisted him in unloading a Kelly joint, weighing between 1,600 and 1,800 pounds. The testimony of Brown is that plaintiff made no complaint in giving him this assistance, that "he was hurt." The proof shows that plaintiff and Brown each lifted one end at a time. Brown explained that the lifting was done by "leverage," in his answer to a question from counsel for plaintiff.

This lifting by "leverage" we do not think was an impossible feat which the quizzing from counsel seemed to suggest.

In commenting on this phase of the testimony, the district judge says in his opinion: "I was favorably impressed by the testimony of this witness, Brown."

We find nothing in the record throwing any doubt on the credibility of that witness who, the trial judge believed, was testifying to the truth.

We find no ground upon which he could be discredited and which could lead us to believe that he did not testify to what occurred. Such being the situation, it is evident, from the testimony of Brown, that plaintiff was not totally and permanently disabled from performing any work of a reasonable character and was not suffering with excruciating pains after the accident or at the time of the trial. Brown's testimony is in keeping with the preponderance of the testimony of the physicians, which shows that the accident of which plaintiff complains never at any time incapacitated him from doing work of a reasonable character.

The fact is from the testimony of these experts, that plaintiff could not have suffered an injury to his spermatic cord from which could have resulted any disability. It even appears from the evidence of Dr. Holcombe, plaintiff's expert witness, that the pains resulting from a strain to the spermatic cord would not have lasted more than six months from the date of injury; would have faded away or disappeared after that period of time.

The record shows in this suit that the accident happened July 5, 1930, and that this suit was filed June 1, 1931, nearly eleven months after the alleged injury was suffered.

The demand was therefore filed five months after the period of time Dr. Holcombe gave for the continuation of the pains that could have resulted from the

injury, taking as true, according to his opinion, that the spermatic cord could have been enlarged and seriously affected by a strain which is denied by the other medical experts to whose testimony we have hereinabove referred.

The logical conclusion is therefore from the testimony of the medical experts and from that of Brown, that plaintiff was not suffering from any pains when he filed his suit or later when it was tried; was not disabled or incapacitated from doing work of any reasonable character upon which his demand rests and which was correctly rejected.